**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **PATRICIA VITALE and VINCENT VITALE, etc.,** | : | Civ. No. 14-4464 (KM) |
| | : | |
| **Plaintiffs,** | : | **MEMORANDUM AND ORDER** |
| | : | |
| **v.** | : | |
| | : | |
| **U.S. GAS & ELECTRIC, INC., ENERGY SERVICE PROVIDERS, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MCNULTY, U.S.D.J.:**

     The defendants, U.S. Gas & Electric, Inc. ("USGE") and Energy Service Providers, Inc. ("ESPI"), have filed a motion (ECF no. 13) to dismiss the Second Amended Complaint ("2AC", ECF no. 10) for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the motion will be denied. Because these are matters that should be explored in discovery and considered on summary judgment, I write only briefly.

**Allegations of the 2AC**

     The Second Amended Complaint is brought as a putative class action. Jurisdiction is premised on the minimal diversity provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The class allegations I set aside for the present; consideration of them would be premature.

     The following facts are taken from the Second Amended Complaint. They are presumed true for purposes of this motion only.

     Defendants are independent energy supply companies ("Independents"). (2AC ¶¶ 24-26) They seek to compete by switching customers from traditional utilities, such as JCP&L or New Jersey Natural Gas ("Utilities"). While Utilities

1

are required to enter into stable, long-term supply contracts, Independents may purchase on a more *ad hoc* basis, exposing them to price fluctuations. (2AC ¶¶ 17–18)

USGE and ESPI have engaged in aggressive marketing to induce customers to switch, touting projected savings of hundreds of dollars per year. (Id. ¶ 18) In standardized telephone sales pitches, defendants stated that customers' rates would be "competitively priced" in comparison to those of Utilities, "every month." (Id. ¶¶ 48, 52) Welcome Packages supplied to new customers confirmed that Defendants' prices were "competitive or "highly competitive." (Id. ¶¶ 55, 56, 65) In fact, when protracted cold weather hit, the customers were charged double or even triple the Utilities' rates. (Id. ¶¶ 59–60) Defendants knew this was inevitable under their purchasing/business model. (Id. ¶¶ 52, 68)

Named plaintiffs, the Vitales, were subjected to pitches consistent with those described above. (Id. ¶¶ 45–48) They agreed to switch, and received Welcome Packages like those described above. (Id. ¶¶ 45–65)

The Terms and Conditions of the "Variable Rate Plan" stated that the "price for all energy sold under this Agreement during the Term shall be a rate calculated monthly based on the applicable PJM zonal wholesale electric, ancillary services, capacity and other costs associated with providing full requirements services to Customer. The monthly rate may be higher or lower than the [Utility] price in any given month." (Id. ¶ 67) This failed to convey the strong likelihood that the price would be much higher, given that the defendants' business model exposed them to sharp short-term fluctuations, but the Utilities' (regulated) model did not. ((Id. ¶¶ 17–18, 68) Indeed, in the event of extreme or protracted bad weather, higher rates were not a question of "might," but "will." (*See id.* ¶¶ 68–69)

In 2014, the Vitales received bills from defendants that were double or triple what the Utilities were charging. (Id. ¶¶ 32–43) They demanded to be switched back to their former Utilities. Defendants delayed and continued to demand payment based on the higher rates. (Id. ¶¶44–54)

2

Count 1 alleges common law fraud. Count 2 alleges a violation of the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J. Stat. Ann. § 56:12-15 *et seq.* Count 3 alleges a violation of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1 *et seq.*

**Standard**

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

From the seminal modern cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Third Circuit has extracted a three-step process for reviewing a complaint:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012). The complaint's allegations must be factual, not conclusory, and they must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

Fraud must be pleaded with particularity. Rule 9(b), Fed. R. Civ. P. requires that a complaint "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). At

a minimum, Rule 9(b) requires "that plaintiffs support their allegations of [ ] fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' - that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). Rule 9(b)'s particularity requirement ensures that defendants accused of fraud are placed on notice of the precise misconduct that is alleged. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

**Analysis**

Defendants contend that the allegations of the complaint are not specific enough to state a claim of fraud under Rule 9(b), or do not make out a claim as a matter of law.

A fraud claim requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. V. Gandi,* 184 N.J. 161, 172–73 (2005).

A NJCFA claim may be stated in more than one way:

> To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff. Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454, 462–465 (1994)....

> The NJCFA defines "unlawful practice" as:

>> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise....

> N.J.S.A. § 56:8–2. "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Cox*, 647 A.2d at 462.

4

*Frederico v. Home Depot,* 507 F.3d 188, 202 (3d Cir. 2007).

A TCCWNA claim is derivative:

> TCCWNA does not establish consumer rights or seller responsibilities. Rather, the statute bolsters rights and responsibilities established by other laws. TCCWNA creates liability whenever a seller presents a consumer with a covered writing that "contains terms contrary to any established state of federal right of the consumer." *Shelton v. Restaurant.com,* 214 N.J. 419, 70 A.3d 544, 558 (2013). The rights and responsibilities to be enforced by TCCWNA are drawn from other legislation. One such piece of legislation is the CFA.

*Watkins v. DineEquity, Inc.,* 591 F. App'x 132, 134 (3d Cir. 2014).

First, I believe that the allegations of the Complaint are reasonably specific, enough so to pass the Rule 9(b) threshold. The complaint states what was said—it directly quotes the telephone pitch—and states in what manner it misled the Vitales as to the "competitive" rates that they would pay. It alleges that they were induced to pay dramatically higher rates as a result.

The major issue dividing the parties is fairly simple. Defendants contend that their statements constituted non-actionable sales "puffery." Plaintiffs contend that they were actionable false statements or part of a deceptive scheme.

Electricity and gas are commodities. The consumer little knows or cares about their source or the factors that go into their wholesale pricing. True, the terms and conditions disclosed that the rates would be "variable" and that they could be higher or lower than the Utilities' rates. (The complaint does not disclose examples of lower rates, but it wouldn't.) The complaint alleges that the defendants' rates were pitched as being "competitive" with the Utilities' rates "every month." It is inferable from the complaint that a consumer, hearing the telephone pitch, could interpret "competitive" to mean "close to" the Utilities' rates. If not, then why switch?

The complaint also inferably alleges that the defendants knew contemporaneously that weather conditions could drive their prices disastrously higher. Defendants suggest that no "mortal" can predict "extreme"

5

weather. True, no one can accurately predict exactly *when* extreme weather will occur, but it is a virtual certainty that it *will* occur. Defendants suggest that "competitive" lacks content. That, too, is a question of degree and context; the marathoner who finishes in the third, fourth, or fifth hour may be regarded as competitive; the one who finishes long after dark, though literally in the race, may not be. Defendants suggest that the likelihood of skyrocketing prices during cold weather would have been "obvious" to consumers. These, too, are matters of degree and of interpretation, unsuitable for resolution on a motion to dismiss.

The "variable" plan shifted the pricing risk from the defendants to the the customer. According to the complaint, which I must credit for purposes of this motion, the customer did not know he or she was taking on such a risk.

The "Variable Rate Plan" purchased by the Vitales stated that the "price for all energy sold under this Agreement during the Term shall be a rate calculated monthly based on the applicable PJM zonal wholesale electric, ancillary services, capacity and other costs associated with providing full requirements services to Customer. The monthly rate may be higher or lower than the [Utility] price in any given month." (Id. ¶ 67) The Complaint alleges, in essence, that this is gobbledygook from the consumer's point of view. If anything, it suggested to the average person that price would be determined by the usual factors. It does not convey the sharp divergence between the Utilities' purchasing model (price-stable, long-term contracts) and that of the defendants (price-unstable, short-term contracts). The complaint alleges that it was nearly inevitable that the defendants' model would cause prices to shoot up at some point, and that the defendants knew this.

These allegations, from the point of view of the average consumer, are sufficient to state a claim of fraud or an unconscionable commercial practice. The nonbinding district court cases cited by both sides do not establish otherwise. These allegations have not been tested by any fact finder, or even explored. But the Second Amended Complaint provides a sufficient basis to go forward.

**ORDER**

**IT IS THEREFORE** this 16th day of March, 2016

**ORDERED**, that the Defendants' motion (ECF no. 13) to dismiss the Second Amended Complaint is DENIED.

HON. KEVIN MCNULTY, U.S.D.J.