**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICIA VITALE and VINCENT VITALE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>US GAS & ELECTRIC, INC., ENERGY SERVICE PROVIDERS, INC. and JOHN DOE CORPORATIONS #1-25,<br><br>Defendants. | CASE NO.: 2:14-cv-04464-KM-MAH |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

**POULOS LOPICCOLO PC**
Joseph LoPiccolo
John N. Poulos
1305 South Roller Road
Ocean, New Jersey 07712
(732) 757-0165
(732) 358-0180 (fax)

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
(973) 623-0858 (fax)

# TABLE OF CONTENTS


| | Page |
|---|---|
| STATEMENT OF FACTS AND PROCEDURAL HISTORY............. | 1-3 |
| SETTLEMENT NEGOTIATIONS ......................................... | 4 |
| SETTLEMENT TERMS ................................................ | 4-7 |
| THIS COURT GRANTS PRELIMINARY APPROVAL.................. | 7-10 |
| STATUS OF NOTICE, EXCLUSIONS AND OBJECTIONS............ | 10 |
| LEGAL ARGUMENT .................................................. | 10-23 |
| I. This Court Should Grant Final Approval of the Class Settlement ................................................... | 10-20 |
| A. The Standard for Final Approval Has Been Met....... | 10-11 |
| B. The Girsh Factors......................................... | 12-20 |
| II. The Settlement Class Should be Certified....................... | 21-22 |
| III. The Notice Provided to the Class Satisfies Due Process.......... | 22-23 |
| IV. The Court Should Appoint Lite DePalma Greenberg, LLC., and Poulos LoPiccolo, PC., as Co-Lead Counsel ............... | 23 |
| CONCLUSION.............................................................. | 24 |

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Basic Inc. v. Levinson, 485 U.S. 224 (1988) .................... 18

Cendant Corp., 264 F.3d .................... 17

Colon v. Passaic County, 2012 WL 1457764 (D.N.J. Apr. 24, 2012) .................... 16

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) .................... 22

Faistl v. Energy Plus Holdings, LLC, 2012 U.S. Dist. LEXIS 125334, at *13 (D.N.J. Sept. 4, 2012) .................... 13

Girsh v. Jepson, 521 F.2d. 153 (3d Cir. 1975) .................... 12

Grandalski v. Quest Diagnostics Inc., 2014 U.S. App. LEXIS 17543, at *17 (D.N.J. Sept. 11, 2014) .................... 18

In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336 (E.D. Pa. 2007) .................... 19

In re Diet Drugs Prods. Liab. Litig., 2000 WL 1222042 (E.D.Pa. Aug. 28, 2000) .................... 19

In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768 (3d Cir. 1995) .................... 10, 11, 17

In re Ikon Office Solutions, Inc., Sec. Litig., 194 F.R.D. 166 (E.D. Pa. 2000) .................... 13

In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92 (D.N.J. 2012) .................... 20

In re Johnson & Johnson Derivative Litig., 900 F. Supp. 2d 467 (D.N.J. 2012) .................... 20

In re Pet Food Prod. Liab. Litig., 629 F.3d 333 (3d Cir. 2010) .................... 11

In re Philips/Magnavox Television Litig., 2012 WL 1677244 (D.N.J. May 14, 2012) .................... 17

In re Prudential Ins. Co. Am. Sales Practices Litig., 148 F.3d 283 (3d Cir. 1998) .......... 12, 16

In re Remeron Direct Purchaser Antitrust Litig., 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .......... 13

In re Remeron, 2005 WL 2230314 .......... 19

In re Schering-Plough/Merck Merger Litig., 2010 WL 1257722 (D.N.J. March 26, 2012) .......... 20

In re Warfarin Sodium Antitrust Litig., 391 F.3d. 516 (3d. Cir. 2004) .......... 11, 19

Kostovetsky v. Ambit Energy Holdings, LLC, No. 15-cv-02553 D.E. 181 at *15-16 (N.D. Ill. Mar. 10, 2017) .......... 14

McCoy v. Health Net, Inc., 569 F. Supp. 2d 448 (D.N.J. 2008) .......... 10, 15, 16

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) .......... 23

Plymouth County Contributory Ret. Sys. v. Hassan, 2012 WL 664827 (D.N.J. Feb. 28, 2012) .......... 12

Stoetzner v. U.S. Steel Corp., 897 F.2d 115 (3d Cir. 1990) .......... 15

Sullivan v. DB Investments, Inc., 667 F.3d 273 (3d Cir. 2011) .......... 18

Urbino v. Ambit Energy Holdings, LLC, 2015 U.S. Dist. LEXIS 96972 (D.N.J. July 22, 2015) .......... 13

Vitale et al. v. US Gas & Electric et al., 2016 U.S. Dist. LEXIS 34730 (D.N.J. Mar. 16, 2016) .......... 3

Weiss v. Mercedes-Benz of North America, Inc., 899 F. Supp. 1297 (D.N.J. 1995) .......... 15

**Statutes**

N.J.S.A. 56:12-15 .......... 2

N.J.S.A. 56:8-1 .......... 2

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 1, 8, 22

Fed. R. Civ. P. 23(a) and 23(b)(3)................................................................... 21

This brief is submitted in support of final approval of a class action settlement between Plaintiffs Patricia Vitale and Vincent Vitale ("Vitales" or "Plaintiffs") and Defendants US Gas & Electric, Inc. and Energy Service Providers, Inc. As detailed below, this settlement satisfies Fed. R. Civ. P. 23 and is fair, reasonable, and adequate. Consequently, Plaintiffs request that final approval be granted.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This class action arises from allegations that independent energy supply companies U.S. Gas & Electric, Inc. ("USGE") and Energy Service Providers, Inc. ("ESPI") (collectively, "Defendants") engaged in an aggressive marketing campaign involving misrepresentations and omissions in order to induce customers to switch from traditional local utilities ("LU's"), such as JCP&L or New Jersey Natural Gas, to USGE and ESPI to supply electric and gas. Plaintiffs and class members allege that USGE and ESPI promised savings of hundreds of dollars per year. In actuality, however, Plaintiffs and class members allege that they ended up paying much more for the supply of gas and electric compared to what they would have paid their LU's. Second Amended Complaint ("SAC"), ¶ 39.

The SAC alleges that Defendants' misrepresentations led Plaintiffs to switch their electric and gas service from their LU's to Defendants in July 2011. Id., ¶ 45. In their marketing, Defendants represented to Plaintiffs and the class that

Defendants' rates would be "competitively priced," compared to LU's, in "every month." Id., ¶¶48, 52. However, Defendants' claims of "competitive" rates in "every month" were false. Indeed, during the very cold weather that hit New Jersey in the winter of 2014, Defendants began to charge the Vitales double and even triple what LU's were charging. Id., ¶¶59, 60.

The Vitales were thus shocked when sky-high energy bills from Defendants became the reality during the late winter and early spring of 2014. Id., ¶¶33-43. During that period, they received bills from Defendants that were significantly higher than any gas and electric bills that the Vitales had ever received in twenty years of living in their home. Id. At certain points during this time, USGE charged the Vitales gas supply rates that were upwards of 300% higher than what New Jersey Natural Gas was charging New Jersey residents at the time. Id., ¶¶36-39. Similarly, ESPI's rates for electric service were at times during this period over 200% higher than what JCP&L was then charging New Jersey residents. Id., ¶¶32-35.

As a result, on June 9, 2014, Plaintiffs filed a complaint in New Jersey Superior Court alleging claims of common law fraud and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("NJCFA"), and the Truth in Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-15 et seq. ("TCCWNA"). Defendants timely removed the action to the United States District

Court for the District of New Jersey where it was assigned to the Honorable Kevin McNulty, U.S.D.J. Following removal, Plaintiffs filed an Amended Complaint on September 18, 2014 and the Second Amended Complaint on October 16, 2014, each one adding additional factual support to their claims.

Defendants moved, on various grounds, to dismiss the operative Second Amended Complaint for failure to state a claim. Judge McNulty issued an opinion and order denying that motion in its entirety. 2016 U.S. Dist. LEXIS 34730 (D.N.J. Mar. 16, 2016). After Judge Hammer scheduled a Rule 16 conference, the parties began to discuss the potential for settlement and agreed to engage in a formal mediation.

In anticipation of the mediation, Defendants provided Plaintiffs with informal discovery. More than 10,000 pages of documents were produced by USGE and ESPI and reviewed by Class Counsel. In addition, Defendants provided spreadsheets detailing the number of USGE and ESPI customers in each of the 11 states and Washington, D.C. where Defendants offer services. Defendants were very cooperative in answering questions and providing follow up information as Plaintiff's counsel reviewed the produced documents. Declaration of Bruce D. Greenberg, executed May 24, 2017 ("Greenberg Dec."), ¶ 5.

## SETTLEMENT NEGOTIATIONS

The Parties agreed to mediate with Honorable Joel B. Rosen, United States Magistrate Judge (Ret.) as the mediator. Greenberg Dec., ¶ 6. An all-day mediation session was held at the offices of Blank Rome LLP in Princeton, NJ. Id. During the course of this mediation, counsel engaged in arm's-length negotiations with the assistance of Judge Rosen, and made significant progress with respect to the contours of a possible settlement. Id. Following the mediation, the Parties continued settlement communications with the assistance of Judge Rosen, ultimately reaching an agreement in principle regarding the merits and the substantive terms of relief for the Settlement Class to resolve nationwide claims. Id.

Once an agreement in principle regarding the merits was reached, the Parties turned to the issue of attorneys' fees, which had not been discussed previously. Id., ¶7. Again with the assistance of Judge Rosen, the Parties reached an agreement in principle regarding attorneys' fees and costs, as well as a single service award for the Class Representatives. Id.

## SETTLEMENT TERMS

The settlement is made up of a cash fund that will be distributed to each of the 346,942 settlement class members associated with 397,929 unique account numbers. Indeed, the Independent Settlement Administrator ("ISA"), Epiq Class

Action and Claims Solutions, Inc. ("Epiq"), identified 50,987 instances where multiple accounts belonged to a unique Settlement Class Member The cash fund will be distributed to the 346,942 settlement class members on a pro rata basis by account number. Declaration of Richard Bithell, executed May 24, 2017 ("Bithell Dec.") at ¶ 5.

As required by the Preliminary Approval Order, Defendants deposited the sum of $1,825,000.00 ("the Settlement Fund") into an interest-bearing account ("the Settlement Fund Account"). Within five business days after the Final Approval Order and Judgment has become final, the Settlement Administrator will transmit checks ("the Settlement Fund Payments") from the Settlement Fund Account to each Settlement Class Member in an amount equal to the Settlement Fund divided by the number of Settlement Class Members. If every eligible account holder cashes their check, each account holder would receive approximately $4.60. Greenberg Dec., ¶ 4. As some class members owned more than one account, in those instances the class member would receive a settlement check for each account. No Settlement Class Member will need to make a claim or take any other action in order to receive a Settlement Fund Payment from the Settlement Fund Account. Id., ¶ 3.

No portion of the Settlement Fund will revert to Defendants under any circumstances. Id. If any Settlement Fund Payment checks are not negotiated by

Settlement Class Members within 90 days of the date such checks are transmitted, such funds shall, at the option of the Court upon a joint application by the Parties, either (1) be redistributed to Settlement Class Members who did negotiate their Settlement Fund Payment checks, or (2) be donated to a charitable organization to be selected by the Court, with no input from the Parties. Id.

Effective as of the date that the Final Approval Order and Judgment becomes final, and in consideration of the Settlement Agreement and the benefits extended to the Settlement Class, Plaintiffs, on behalf of themselves and the Settlement Class Members, and each Settlement Class Member who does not opt out of the settlement, will release Defendants from the claims related to this action. Id., ¶2, Ex. 1 at ¶4.

The Parties selected Epiq Class Action and Claims Solutions, Inc. as the ISA to handle claims. Defendants will pay for the ISA's notice and administration costs separately from and in addition to monies paid to Class Members. Id., ¶2, Ex. 1 at ¶3(c).

The Parties also agreed, subject to the Court's final approval, that Defendants will not object or oppose an application by Plaintiffs' counsel for an award of attorneys' fees and costs of up to $500,000.00. That award will be paid by Defendants, a payment that is separate from and in addition to the payment to Class Members. Id., ¶ 2, Ex. 1 at ¶ 11(b).

Finally, as part of the Settlement, the Parties also agreed that, subject to the Court's final approval, the named Plaintiffs who are serving as Class Representatives may seek a service award in recognition of the amount of time and effort they expended in acting as Class Representatives. Defendants agreed not to oppose the payment of a single $2,500 incentive award to Plaintiffs (Husband and Wife). Id., ¶ 2, Ex. 1 at ¶ 11(c). The payment of this service award, which will be paid out of the attorneys' fee award, is also separate from, and does not reduce, the payment to Class Members. Id., ¶7.

**THIS COURT GRANTS PRELIMINARY APPROVAL**

On April 24, 2017, this Court preliminarily certified the following class for settlement purposes only:

> Each person or entity in the States of New Jersey, Connecticut, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Ohio, and the District of Columbia, who, from January 1, 2008 to February 10, 2017, entered into a gas or electric service supply plan with Defendants or either of them.
>
> Each person or entity in the State of Pennsylvania who, from January 1, 2008 to February 10, 2017, entered into a gas service supply plan with Defendants or either of them.
>
> Excluded from the Settlement Class are all judges to whom the Action is assigned and the staff of those judges; the officers, directors and counsel of record of Defendants; all employees of Defendants; any putative Settlement Class Members who properly and timely exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Preliminary Approval Order; and any putative Settlement Class Members who have already had adjudicated in legal

proceedings other than this action the same or similar claims as those alleged in this action.

See D.E. 52 at 4-5.

In doing so, the Court made the following findings:

- The Settlement Agreement satisfies the numerosity, typicality and commonality requirements of Rule 23;
- The settlement class is ascertainable;
- Plaintiffs are adequate class representatives who can fairly, fully and adequately protect the interests of the settlement class and thus are appointed as representatives of the Settlement Class
- Lite DePalma Greenberg, LLC and Poulos LoPiccolo PC are adequate Class Counsel and thus are appointed as Class Counsel for the Settlement Class;
- Common questions of law or fact predominate over any questions affecting only individual members for settlement purposes;
- A multistate class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this controversy;

Id. at 2-5.

Moreover, the Court preliminarily approved the Settlement Agreement finding it fair, reasonable and adequate and that the Settlement falls within the appropriate range of possible approval and does not appear in any way to be the product of collusion. The Court fully adopted and incorporated the terms of the Settlement Agreement into the Preliminary Approval Order. Id. at 5-6.

The Court also approved the form and content of the proposed Summary Notice and Settlement Notice as well as the Notice Plan described in the Settlement Agreement and Ordered that notice be given to the Settlement Class. A

Finally, the Court set the following procedures and deadlines for final approval of the settlement:

- A Fairness Hearing shall be held at 10:00 a.m. on July 18, 2017;
- Class members who wish to be excluded from the Settlement Class must mail their requests for exclusion in written form to the Settlement Administrator no later than 30 days after issuance of the Summary Notice (June 15);
- All objections to certification of the Settlement Class, the designation of Plaintiffs as class representatives, the appointment of Class Counsel, the Settlement, the Settlement Agreement, or Class Counsel's Application, shall be made in writing and, no later than thirty (30) days after the date of issuance of the Summary Notice (June 15);
- All persons wishing to appear at the Fairness Hearing, either in person or by counsel, for the purpose of objecting to any aspect of the certification of the Settlement Class, the designation of Plaintiffs as representatives of the Settlement Class, the appointment of Class Counsel, the Settlement, the Settlement Agreement, or Class Counsel's Application, must file with the Court and serve, on Defendants' Counsel and on Class Counsel, no later than twenty (20) days before the date of the Fairness Hearing (June 28), a notice of their intention to appear setting forth the basis of their objections and summarizing the nature and source of any evidence they intend to present at the Fairness Hearing;
- No later than twenty-one (21) days before the deadlines for Requests for Exclusion and for Filing Objections and Requests to Appear (May 25), Class Counsel shall file with this Court, and serve on Defendants, Class Counsel's Application, pursuant to the Settlement Agreement,

their papers in support of final approval of the Settlement and their Application for an award of attorneys' fees and reimbursement of costs incurred in the Action and for awards to Plaintiffs.

See D.E. 52 at 10-15.

## STATUS OF NOTICE, EXCLUSIONS AND OBJECTIONS

Pursuant to the Preliminary Approval Order, the Settlement Notice was posted to the settlement website on May 9 – www.usgesettlement.com – and by May 16, a copy of the Summary Notice was disseminated to every Class Member via email and first class mail if the settlement administrator does not have the class member's email address. Bithell Dec., ¶¶ 6, 10.

As of May 23, 2017, no Class Members have opted to be excluded from the Settlement Class and no class members have filed objections. Id., ¶¶ 12-13.

## LEGAL ARGUMENT

## POINT I

## THIS COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS SETTLEMENT

### A. THE STANDARD FOR FINAL APPROVAL HAS BEEN MET

In this Circuit, the law favors settlement, especially in class actions where substantial judicial resources can be conserved by avoiding protracted litigation. ); In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 784 (3d Cir. 1995) cert den. 516 U.S. 824 (1995); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 458 (D.N.J. 2008). The key inquiry is whether the

settlement is "fair, reasonable, and adequate," General Motors, 55 F.3d at 785. Where the parties can resolve the litigation through good faith and arms-length negotiations, judicial resources can be preserved and the public interest is furthered. Id.; In re Pet Food Prod. Liab. Litig., 629 F.3d 333, 351 (3d Cir. 2010) ("we reaffirm the overriding public interest is settling class action litigation.").

This proposed settlement falls well within the range of reasonableness and the relief available to class members is fair and adequate. Defendants agreed to pay a total of $1,825,000 to the members of the settlement class. Payments will be made pro rata directly to the class members. There will be no need for class members to file a claim and Defendants will not be entitled to a reverter in the event checks are returned or not cashed.

In reviewing the settlement terms, this court should apply a presumption of fairness. In re Warfarin Sodium Antitrust Litig., 391 F.3d. 516, 535 (3d. Cir. 2004). The settlement was reached after motion practice and extensive discovery, and was negotiated at arms-length, with the assistance of Judge Rosen, by experienced class action attorneys. This Court has already preliminarily certified the proposed class and preliminarily approved the Settlement Agreement. Nothing has changed since preliminary approval. Indeed, as of May 23, 2017, there have been no opt outs and no objections. Bithell Dec., ¶¶ 12-13.

## B. THE GIRSH FACTORS

In Girsh v. Jepson, 521 F.2d. 153 (3d Cir. 1975), the Third Circuit set forth a number of factors to be considered in approving a class settlement.[1] See also In re Prudential Ins. Co. Am. Sales Practices Litig., 148 F.3d 283, 317 (3d Cir. 1998). These factors weigh in favor of approval:

**Complexity, Expense and Likely Duration of the Litigation**

This action raised numerous complex issues of law and fact. If the litigation continued, Plaintiffs most certainly would have had to engage experts in field of weather patterns as well as a damages expert and potentially a human factors expert. A battle between the experts would have ensued. Expert depositions costing substantial time and money would have been required. This would have been followed by *Daubert* motions as well as, most likely, a motion for summary judgment by Defendants. The class certification motion would have been fiercely contested by very able counsel. Regardless of the outcome of a class certification motion, the losing party would have most certainly appealed. Assuming the Third Circuit held that a class should have been certified, the matter would then return to the District Court and proceeded to trial. It is anticipated that the trial would have lasted 3-4 weeks.

---

[1] However, as noted in Plymouth County Contributory Ret. Sys. v. Hassan, 2012 WL 664827, at *2 (D.N.J. Feb. 28, 2012) the Girsh factors are a guide and the absence of one or more does not automatically render the settlement unfair.

Thus, this was a complex action which would have been expensive, time consuming, and potentially risky to litigate to conclusion. There were significant risks to establishing liability and damages, as well as maintaining the class. The Parties have achieved favorable resolution on the core claims in the case and it is unlikely that we could have reached a better result through trial. In balancing "the proposed settlement against the enormous time and expense of achieving a potentially more favorable result through further litigation," the balance weighs heavily in favor of approval. See In re Remeron Direct Purchaser Antitrust Litig., 2005 WL 3008808 at *4 (D.N.J. Nov. 9, 2005). Since the case presented so many complex issues of law, the potential for appeal in this action was a virtual certainty which also weighs in favor of approval. See In re Ikon Office Solutions, Inc., Sec. Litig., 194 F.R.D. 166, 179 (E.D. Pa. 2000).

As demonstrated by other class actions involving very similar facts in this District and elsewhere, this case carries real risks. See Urbino v. Ambit Energy Holdings, LLC, No. 14-5184 (MAS) (DEA), 2015 U.S. Dist. LEXIS 96972 (D.N.J. July 22, 2015) (granting motion to dismiss consumer fraud claims against third party energy supplier who, despite its sales practices promising competitive rates and savings, actually charged higher rates than competitors, because the Court found that the parties' written agreement sufficiently disclosed the supplier's right to vary rates); Faistl v. Energy Plus Holdings, LLC, No. 12-2879 (JLL), 2012 U.S.

Dist. LEXIS 125334, at *13 (D.N.J. Sept. 4, 2012) (dismissing consumer fraud claims against third party utility provider who lured customers away from competitors with misleading marketing materials such as an express promise to "[s]ave up to 10%", but actually charged more than competitors, because the Court found that the parties' written agreement "contained no guarantee" of savngs and stated that rates were "variable and therefore subject to change each billing cycle"); Kostovetsky v. Ambit Energy Holdings, LLC, No. 15-cv-02553, D.E. 181 at *15-16 (N.D. Ill. Mar. 10, 2017)(granting summary judgment on RICO and unjust enrichment claims against natural gas provider operating in deregulated energy markets across the United States, holding company's sales tactics were not fraudulent and pointing out that rate increases that came with a switch in plan were disclosed in a terms of service notice mailed to plaintiff and other customers whom enrolled.)

**Reaction of Class to Settlement**

The extensive efforts of the ISA, Epiq Class Action and Claims Solutions, Inc., to notify the Class are described in the Bithell Dec. submitted herewith. The claims administrator complied with the notice provisions detailed in the Preliminary Approval Order by providing direct notice to each Class Member by first class mail, and/or email and posting the Settlement Notice to the settlement website – www.usgesettlement.com. The notices were in the form previously

approved by this Court and contain information adequate to inform Class Members of the essential terms of the settlement, description of the litigation, consequences of accepting or opting out of the settlement and other relevant information, including the amount of incentive awards for the Class Representatives and the maximum amount of attorney's fees for class counsel. Bithel Dec., ¶¶ 3-10. As of May 23, 2017, there were 875 unique visits to the website set up by Epiq which contained the relevant information regarding the litigation and terms of the settlement. Id., ¶ 11. The automated phone response system set up by Epiq to respond to FAQs logged 1,913 calls. Id. at ¶ 9.

After this far-reaching effort to provide notice to the thousands of class members, as of May 23, 2017, no class members have sought to be excluded and no objections have been filed. Bithel Dec., ¶¶ 6, 12-13.

No exclusions or objections for a class of this size shows overwhelming acceptance on behalf of the class and strongly favors approval. Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); McCoy, 569 F.Supp. 2d at 459; Weiss v. Mercedes-Benz of North America, Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995), aff'd, 66 F.3d 314 (3d Cir. 1995) (100 objections and opt outs out of 30,000 class members weighs in favor of settlement).

**Stage of Proceeding and Amount of Discovery Completed**

The key issue is whether the parties had sufficient information to conduct an "informed negotiation" and that the parties can understand and appreciate the merits of the claims before negotiating. In re Prudential, 148 F.3d at 319. See Colon v. Passaic County, 2012 WL 1457764, at *4 (D.N.J. Apr. 24, 2012) ("Considering, the amount of effort expended by class counsel in this matter, as well as class counsel's extensive experience litigating class actions . . . the Court is convinced that Plaintiffs have a sufficient understanding of the merits of this case."). Here, more than 10,000 pages of documents were produced by USGE and ESPI and reviewed by Class Counsel. In addition, Defendants provided spreadsheets detailing the number of USGE and ESPI customers in each of the 11 states and Washington, D.C. where Defendants offer services. Defendants were very cooperative in answering questions and providing follow up information as Plaintiffs' counsel reviewed the produced documents. The extensive amount of discovery and motion practice, as well as the stage of proceedings favor approval of the settlement.

**Risks of Establishing Liability and Damages**

The fourth and fifth Girsh elements are often considered together. McCoy, 569 F.Supp. 2d at 461. Central is whether plaintiffs had a likelihood of success if the case proceeded to trial. Plaintiffs believe that evidence that internal USGE and

ESPI documents produced showed that Defendants did not fully disclose the true nature of the contracts and the affect a variable rate can have on customers' gas and electric bills each month. However, although Plaintiffs sufficiently pled causes of action in common law fraud, the NCFA, and the TCCWNA, there certainly was no guarantee a jury would find in favor of Plaintiffs on these causes of action especially considering that Defendants did disclose that its contracts with many customers were variable.

Assuming liability could be established, the Court must also consider that Plaintiffs would have encountered strong opposition in establishing damages. As the Court noted in In re Philips/Magnavox Television Litig., 2012 WL 1677244, at *12 (D.N.J. May 14, 2012), this Girsh factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." Citing Cendant Corp., 264 F.3d at 238 (quoting General Motors, 55 F.3d at 816). Plaintiffs' allegations of damages would require a complicated analysis involving sophisticated expert opinions relating to how much, if anything, Plainffs and class members actually lost, during the time Defendants supplied each customer gas or electric service. Indeed, Defendants would argue that the net result for some customers of Defendants is that they saved money over time compared to using their local utility company. A "battle of the experts" would ensue. Hence, this Girsh factor also supports approval.

**Risk of Maintaining Class Action through Trial**

This action was settled prior to the class certification motion being filed. Although Plaintiffs contend that their claims were well-suited for treatment on a class-wide basis, Defendants would have strenuously argued that individual issues predominated over common issues.

In fact, in their motion to dismiss, Defendants began attacking class certification. Defendants argued that a showing of common law fraud would require each plaintiff to individually demonstrate reliance on the same alleged misrepresentation/omission which would "overwhelm class issues." See Def's Brief in Support of Motion to Dismiss The Second Amended Complaint (D.E. 14) at 19 (citing Basic Inc. v. Levinson, 485 U.S. 224, 242 (1988)). In addition, Defendants argued, maintaining a nationwide class, in light of differences in consumer protection laws would be difficult. Id. ("Nor can they demonstrate the limited exception where the 'differences in state law [f]all into a limited number of predictable patterns, and any deviations coul be overcome at trial by grouping similar state laws together and applying them as a unit.'") (citing Grandalski v. Quest Diagnostics Inc., No. 13-4329, 2014 U.S. App. LEXIS 17543, at *17 (D.N.J. Sept. 11, 2014) (quoting Sullivan v. DB Investments, Inc., 667 F.3d 273, 301 (3d Cir. 2011) (en banc) (internal quotations omitted)).

Moreover, Defendants would most likely argue that although Defendants' sales representatives all used similar call scripts, the sales representatives may have deviated from the scripts, resulting in each customer being subject to a different sales pitch. Defendants would thus argue that individual trials would be necessary to determine what each class member was told during the sales pitch. Hence, this Girsh factor also favors approval.

**Ability of USGE and ESPI to Withstand a Greater Judgment**

This factor is not applicable as USGE and ESPI appear to have substantial net worth. Nonetheless, where a settlement is within the range of reasonableness and provides substantial benefits to the Class this factor will not be used to defeat approval of the class action settlement. See In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) ("[t]his factor does not require that the defendant pay the maximum it is able to pay"); In re Diet Drugs Prods. Liab. Litig., Nos. 1203, 99-20593, 2000 WL 1222042, at *62 (E.D.Pa. Aug. 28, 2000)").

**Range of Reasonableness of Settlement Fund in Light of Best Recovery and all Attendant Risks of Litigation**

The eighth and ninth Girsh factors can be combined in this action and support approval of the settlement. Essentially, the Court must assess "whether the settlement represents a good value for a weak case or a poor value for a strong case." In re Warfarin, 391 F.3d at 538; In re Remeron, 2005 WL 2230314, at *23

(same). "[C]ourts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth Girsh factor) and a range in light of all the attendant risks of litigation (the ninth factor)." In re Schering-Plough/Merck Merger Litig., 2010 WL 1257722, at *12 (D.N.J. March 26, 2012). However, the Court must keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution . . ." In re Johnson & Johnson Derivative Litig., 900 F. Supp. 2d 467 (D.N.J. 2012). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92, 105 (D.N.J. 2012) (internal quotation and citation omitted).

In this case, in light of the size of the Settlement Class, the monetary benefits available, and the risks of proving liability and damages and achieving certification of a nationwide class and maintaining that certification through trial, a settlement fund of $1,825,000 fairly and adequately rewards the class.

Consequently, this settlement is within the range of reasonableness, satisfies the Girsh factors and should be approved by the Court.

## POINT II

## THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Settlement Class satisfies each of the four requirements for class certification under Rule 23(a) and both requirements of Rule 23(b). For the same reasons this Court preliminarily approved class certification under Rule 23, it should also grant Plaintiffs' motion for final class certification approval here. As the Court already found:

- The Settlement Agreement satisfies the numerosity, typicality and commonality requirements of Rule 23;
- The settlement class is ascertainable;
- Plaintiffs are adequate class representatives who can fairly, fully and adequately protect the interests of the settlement class and thus are appointed as representatives of the Settlement Class;
- Lite DePalma Greenberg, LLC and Poulos LoPiccolo PC are adequate Class Counsel and thus are appointed as Class Counsel for the Settlement Class;
- Common questions of law or fact predominate over any questions affecting only individual members for settlement purposes;
- A multistate class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this controversy;

D.E. 52 at 2-5. Nothing has changed since this Court granted preliminary approval on April 24, 2017. Indeed, there have been no objections and no opt outs filed. In sum, certification of the proposed settlement class is appropriate under Federal

Rules of Civil Procedure 23(a) and 23(b)(3). This Court should certify the proposed class for settlement purposes.

## POINT III

## THE NOTICE PROVIDED TO THE CLASS SATISFIES DUE PROCESS

As detailed above, and in the Declaration of Richard Bithell Regarding Notice and Claims Administration submitted in support of this Motion for Final Approval, the Notice Program which this court preliminarily approved has been successful and more than satisfies the due process requirements of Fed. R. Civ. P. 23 which calls for "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

Here, Epiq sent a total of 229,427 Postcard Notices and a total of 107,417 Email Notices to the Class Members pursuant to the Preliminary Approval Order. Bithell Dec., ¶ 6. Additionally, the Summary Notice was posted on the settlement website which has been visited 875 times as of May 23, 2017 according to Epiq records. Id., ¶ 11. Moreover, the approved Notices, claim forms, frequently asked questions on the settlement website, and copies of the salient pleadings, as well as the toll-free number establishes that Settlement Class Members have been fully informed of their rights and obligations under the Settlement Agreement. Id., ¶¶ 3-10.

Thus, due process has been satisfied as the notice to the class is "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Hence, final approval of the settlement is also justified based upon the notice provided to the Settlement Class.

## POINT IV

## THE COURT SHOULD APPOINT LITE DEPALMA GREENBERG, LLC AND POULOS LOPICCOLO PC AS CO-LEAD CLASS COUNSEL

For the same reasons this Court preliminarily approved Lite DePalma Greenberg and Poulos LoPiccolo as Co-lead Class Counsel (D.E. 52 at 5), the Court should grant final approval of these firms as Co-lead Class Counsel.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' respectfully request that the Court grant final approval of the class action. A proposed Final Approval Order is annexed as Exhibit 3 to the Greenberg Declaration.

Dated: May 25, 2017

**POULOS LOPICCOLO PC**

By: *_/s/ Joseph LoPiccolo_*
Joseph LoPiccolo
John N. Poulos

1305 South Roller Road
Ocean, New Jersey 07712
(732) 757-0165
(732) 358-0180 (fax)

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
(973) 623-0858 (fax)

*Co- Counsel For Plaintiffs and the Class*